# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### April 5, 2017 Session

## CHURCH OF GOD IN CHRIST, INC., ET AL. v. L. M. HALEY MINISTRIES, INC., ET AL.

**Appeal by Permission from the Court of Appeals**
**Chancery Court for Fayette County**
**No. 15815      Martha Brasfield, Chancellor**

_____

**No. W2015-00509-SC-R11-CV – Filed September 21, 2017**

_____


HOLLY KIRBY, J., concurring separately.

I am pleased to concur in the well-written majority opinion but write separately on the question of whether the ecclesiastical abstention doctrine is a bar to subject matter jurisdiction or an affirmative defense.

For now, I concur in the majority's conclusion that the ecclesiastical abstention doctrine is a bar to subject matter jurisdiction, because the courts of this State have consistently viewed it as such and the United States Supreme Court did not hold to the contrary in *Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 565 U.S. 171 (2012). I have doubts, however, about whether the United States Supreme Court would view the ecclesiastical abstention doctrine as a bar to subject matter jurisdiction if presented with the question after *Hosanna-Tabor*.

As explained by the majority, the ecclesiastical abstention doctrine and the ministerial exception both derive from the Religion Clauses of the First Amendment of the United States Constitution. In *Hosanna-Tabor*, the United States Supreme Court held that the younger of the two siblings—the ministerial exception—is an affirmative defense, not a subject matter jurisdictional bar. *Id.* at 195 n.4. The majority surmises that there would be a different result as to the ecclesiastical abstention doctrine, based on two things. First, the majority appears to interpret *Hosanna-Tabor*'s holding on the ministerial exception as premised in part on the fact that jurisdiction in that case was based on federal civil rights statutes, as opposed to other bases for jurisdiction. Second, the majority appears to read *Watson v Jones*, 80 U.S. 679, 727 (1871), as holding affirmatively that the ecclesiastical abstention doctrine is a subject matter jurisdictional bar. I harbor doubts about both bases for the majority's holding.

First, the difference between the basis for jurisdiction in *Hosanna-Tabor* and the basis for jurisdiction in this case seems to be of no moment.  Jurisdiction in *Hosanna-Tabor* arose from federal civil rights statutes, while jurisdiction in the instant case is rooted in state courts' common-law jurisdiction over property disputes.  The majority does not explain why this variance would cause the ecclesiastical abstention doctrine to be treated differently from the ministerial exception.  The state courts' historic common law jurisdiction over property disputes, dating back to English common law, is certainly as solid a basis for jurisdiction as any federal statute.  On this issue, I view the differentiation in basis for jurisdiction as a distinction without a difference.

Second, in a case that applies *Watson*, it appears that the U.S. Supreme Court held that the ecclesiastical abstention doctrine is *not* a bar to subject matter jurisdiction, albeit in a brief way.  In *Gonzalez v. Roman Catholic Archbishop of Manila*, 280 U.S. 1, 11 (1929), the petitioner claimed, pursuant to a testamentary trust, that he was entitled to be appointed to a collative (lay) chaplaincy and also entitled to income under the trust.  The trial court ordered the archbishop to appoint the petitioner to the chaplaincy, and the Supreme Court of the Philippine Islands reversed.  *Id*.  On appeal to the United States Supreme Court, the contention that the Philippine courts lacked subject matter jurisdiction because the case involved ecclesiastical matters was summarily rejected:

> The archbishop interposes here, as he did below, an objection to the jurisdiction of the Philippine courts.  He insists that, since the chaplaincy is confessedly a collative one, its property became spiritual property of a perpetual character subject to the jurisdiction of the ecclesiastical forum, and that thereby every controversy concerning either the right to appointment or the right to the income was removed from the jurisdiction of secular courts.  *The objection is not sound*.  The courts have jurisdiction of the parties.  For the archbishop is a juristic person amenable to the Philippine courts for the enforcement of any legal right; and the petitioner asserts such a right.  *There is jurisdiction of the subject-matter; for the petitioner's claim is, in substance, that he is entitled to the relief sought as the beneficiary of a trust*.
>
> The fact that the property of the chaplaincy was transferred to the spiritual properties of the archbishopric *affects not the jurisdiction of the court*, but the terms of the trust.  *Watson v. Jones*, 13 Wall. 679, 714, 729, 20 L. Ed. 666.  The archbishop's claim in this respect is that by an implied term of the gift, the property, which was to be held by the church, should be administered in such manner and by such persons as may be prescribed by the church from time to time.  Among the church's laws, which are thus claimed to be applicable, are those creating tribunals for the determination of ecclesiastical controversies.  Because the appointment is a canonical act,

2

it is the function of the church authorities to determine what the essential qualifications of a chaplain are and whether the candidate possesses them. In the absence of fraud, collusion, or arbitrariness, the decisions of the proper church tribunals on matters purely ecclesiastical, although affecting civil rights, are accepted in litigation before the secular courts as conclusive, because the parties in interest made them so by contract or otherwise.

*Id.* at 15-16 (emphasis added) (footnote citing *Watson v. Jones* omitted). The Court in *Gonzalez* agreed with the Philippine Supreme Court that the trust contemplated that church authorities, in their discretion, would determine the qualifications of the chaplaincy, so it affirmed. *Id.* at 15- 17.

The precedential value of *Gonzalez* is muddied somewhat by the fact that dicta in the *Gonzalez* opinion, not pertinent to our appeal, was later rejected by the Supreme Court. *See Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 712 (1976) (rejecting *Gonzalez*'s "suggested 'fraud, collusion, or arbitrariness' exception to the *Watson* rule"). Moreover, *Gonzalez* has been cited only a few times. However, I find no case that overrules the *Gonzalez* holding on subject matter jurisdiction, so it appears that holding remains intact.

In framing the question of whether the ecclesiastical abstention doctrine is a subject matter jurisdictional bar or an affirmative defense, the majority comments: "An affirmative defense generally is deemed waived unless timely raised in an answer or responsive pleading." While this statement is generally true, the generalization does not apply to the type of affirmative defense *Hosanna-Tabor* deemed the ministerial exception to be.

*Hosanna-Tabor* held that the ministerial exception "operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar. That is because the issue presented by the exception is 'whether the allegations the plaintiff makes entitle him to relief,' not whether the court has 'power to hear [the] case.'" *Hosanna-Tabor*, 565 U.S. at 195 n.4. In other words, *Hosanna-Tabor* holds that the ministerial exception is treated as failure to state a claim upon which relief can be granted. Under Rule 12.08 of the Tennessee Rules of Civil Procedure, the defense of failure to state a claim need not be raised in an initial responsive pleading or in an answer, but "may also be made by a later pleading, if one is permitted, or by motion for judgment on the pleadings or at the trial on the merits. . . ." Tenn. R. Civ. P. 12.08. This Court has held that the trial court may raise failure to state a claim upon which relief can be granted *sua sponte*, in the absence of any motion, and may dismiss a claim on that basis. *See Huckeby v. Spangler*, 521 S.W.2d 568, 571 (Tenn. 1975). Thus, even if the ecclesiastical abstention doctrine were deemed an affirmative defense, it would not be waived if it were not raised in an answer or responsive pleading, and the court could raise the issue *sua sponte* if the parties did not.

3

This addresses the risk that a court would find itself unable to avoid deciding ecclesiastical matters, even if the ecclesiastical abstention doctrine were deemed not to be a subject matter jurisdictional bar.

The U.S. Supreme Court's decision in *Hosanna-Tabor* offers little basis for prognosticating that the Court would treat the ecclesiastical abstention doctrine differently from the ministerial exception. Indeed, the footnote in *Hosanna-Tabor* that holds that the ministerial exception is an affirmative defense blurs the line between the ecclesiastical abstention doctrine and the ministerial exception. One of the cases cited in footnote 4 in *Hosanna-Tabor*, cited to demonstrate the split of authority among the circuits on whether the ministerial exception is a bar to subject matter jurisdiction, in fact appears to discuss the ecclesiastical abstention doctrine. Footnote 4 to *Hosanna-Tabor* cites *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 654 (10th Cir. 2002), which involved a youth minister who claimed that church statements regarding her homosexual relationship amounted to sexual harassment. While the facts in *Bryce* would suggest the ministerial exception, the court in that case addressed the church's assertion of the "church autonomy defense," i.e., the ecclesiastical abstention doctrine:

> Here, St. Aidan's Church raised the church autonomy defense on a motion to dismiss for lack of subject matter jurisdiction. The motion would more appropriately be considered as a challenge to the sufficiency of plaintiff's claims under Rule 12(b)(6). If the church autonomy doctrine applies to the statements and materials on which plaintiffs have based their claims, then the plaintiffs have no claim for which relief may be granted.

*Id.* at 654.

The majority asserts that the United States Supreme Court "has described the ecclesiastical abstention doctrine in a manner that suggests it constitutes a subject matter jurisdictional bar, where applicable." In support, it cites a passage in which the *Watson* Court referred to a matter in which "a subject-matter of dispute, strictly and purely ecclesiastical in its character,—a matter over which the civil courts exercise no jurisdiction. . . ." *Watson*, 80 U.S. at 733. Respectfully, this language is equally consistent with treating the ecclesiastical abstention doctrine as failure to state a claim upon which relief can be granted. Indeed, even *Watson*, which was decided under the common law rather than the First Amendment,[1] does not describe the doctrine as requiring instant dismissal; rather, it describes it as requiring courts to accept as binding the decisions of ecclesiastical bodies on ecclesiastical questions:

---

[1] *Watson* was decided "before judicial recognition of the coercive power of the Fourteenth Amendment to protect the limitations of the First Amendment against state action." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 115 (1952).

4

"[W]henever the questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them."

*Watson*, 80 U.S. at 727.

This sounds like failure to state a claim upon which relief can be granted. Thus, true to its name, under the ecclesiastical abstention doctrine, the court chooses to "abstain," or stay its hand, if reaching the merits on a controversy before it would require the court to wade into ecclesiastical matters. Moreover, the majority's reliance on this language in *Watson* does not take into account the Supreme Court's later decision in *Gonzalez*, which cites *Watson*. *Gonzalez*, 280 U.S. at 15-16.

For all of these reasons, it is far from clear whether the ecclesiastical abstention doctrine is a bar to subject matter jurisdiction or whether it is considered an affirmative defense, failure to state a claim upon which relief can be granted. For now, however, I will concur in the majority's decision to continue to view it as a subject matter jurisdictional bar.

_____
HOLLY KIRBY, JUSTICE

5